MoIlvainb, C. J.
Section 34 of the act passed May 1, 1852, entitled “ an act to provide for the creation and regulation of incorpoi-ated companies in the State of Ohio,” contains the following provision: “ Provided, that no company or association of individuals, which has been or may hereafter be incorporated for the purpose of making any turnpike or plank-road, shall be authorized to erect or keep up any toll-gate or receive tolls within the corporate limits of any incorporated city, town, or village, or within eighty rods of such limits.”
The village of Riverside, situate in Hamilton county, was *663 incorporated as such in the year 1867. Previous to the incorporation of the village, a turnpike road, known as the extension of the Lower River road, had been located and constructed through the territory which was afterward embraced within the corporate limits of the village, and a tollgate erected at a point thereon within the present limits of the village. This toll-gate was kept up and tolls received thereat, from the completion of the turnpike in 1851, to the date of the decree in the court below — to wit, June, 1875.
Upon the record before us two questions arise: 1. Can the proviso in section 84 be enforced by the defendant in error against the plaintiff in error ? 2. Does this proviso apply at all to the extension of the Lower River road company?
1. It is contended, on behalf of the company, that this provision was not intended to apply in a case where a-turnpike road has been or may be constructed, and a toll-gate erected thereon at a point outside and eighty rods or more from the limits of an incorporated city, town, or village, and where, by a subsequent incorporation of a city, town, or village, or by an extension of its corporate limits, the toll-gate so erected is brought within such limits or prohibited distance. And it is also contended that if this provision was intended to be applied in such case, such application would be an unwarranted infringement upon the rights of private property, and therefore repugnant to the constitution of the state.
Without stopping here to discuss these propositions, it must suffice to say that neither of them can be maintained. The former is entirely unsound, and the latter, to say the least, is stated too broadly.
2. In view, however, of the history of this turnpike road, and of the constitution of the plaintiff in error, we think it quite clear that the proviso in said section 34 has no application in the case.
This turnpike road was originally a county road, known as the extension of the Lower River road, which the commissioners of Hamilton county converted into a turnpike in *664 the year 1851, hy improving and macadamizing as authorized by a special act of the legislature, passed March 22, 1850. By the provisions of this act the commissioners were authorized to improve, put in order, and keep in thorough repair, as a good macadamized road, the said extension of the Lower River road; and to that end, they were authorized to borrow any sum of money not exceeding two thousand dollars for each mile of the road improved, and issue bonds therefor for any time not exceeding five years, at a rate of interest not exceeding six per cent, per annum, pledging the funds arising from tolls collected on the road to the payment of principal and interest. It was provided, however, that the county of Hamilton should in no event, or under any pretense, be responsible for the payment of principal or interest ■of the bonds. The commissioners were also authorized, so soon as the road might be fit for use, to erect one or more toll-gates on the road at such point or points as might be deemed advisable by them, and to collect tolls from all persons traveling on the road, or any part of the same, at the rates therein specified. It was also made the duty of the commissioners to appoint agents to superintend the road and gate-keepers to collect tolls ; and of the auditor of the ■county to keep a separate account of the transactions and business of the road; and of the treasurer of the county to •receive the tolls collected on the road, and pay them out on ■the order of the auditor in discharge of the indebtedness of the road. And it was also provided that as soon as the liabilities on account of the road might he discharged, the commissioners should reduce the tolls so as to collect only .a sufficient amount to pay the actual cost of keeping the road in repair.
Upon the completion of the road, a toll-gate was erected by the commissioners at a point within the present limits of the village of Riverside, which has been maintained and tolls collected thereat ever since.
Under the provisions of this statute the commissioners borrowed money and issued bonds therefor, to the amount of $11,000 and upward, pledging irrevocably the tolls of *665 the road to the payment of principal and interest. These ■bonds are still outstanding and unpaid.
The management of the road was continued under the control of the commissioners until the year 1859.
On the 15th of April, 1857, the general assembly passed an act authorizing the commissioners of Hamilton county, on certain conditions, to surrender the Lower River road, and the extension thereof, to the bondholders and creditors, and on the 25th of February, 1859, this act was so amended as to authorize the surrender of the extension alone to its creditors and bondholders, provided a majority in amount would assent thereto. In pursuance of these acts, the extension of the Lower River road was surrendered to its bondholders and creditors upon the conditions prescribed. The parties to whom the surrender was thus made were authorized by the act to become incorporated under the provisions of the act of May 1,1852, above referred to, subject to be regulated by the provisions of this act — to wit, the act of April 15, 1857. One of the provisions of this act was, that each bondholder or creditor should be entitled to one share of stock for each fifty dollars in amount of his bond or credit. ("We do not understand, however, that the bonds or credits of the road were to be canceled or merged in the stock. The bond or credit remained intact, whether the bondholder or creditor did or did not become a corporator.) After the surrender, a majority of the bondholders (if it were competent under this species of legislation for them to do so) became a corporation, by the name of “ The Extension . of the Lower River Road Company ” — to wit, the plaintiff in error.
This statute further provided that a company so formed should not at any time pay a greater interest or make a larger dividend than six per cent, per annum upon their indebtedness or the stock of the company; and that after keeping the road in repair and making such improvements upon the same as the company might think necessary and proper, and the payments of the debts and stock with six per cent, interest thereon, the tolls upon the road should be *666 reduced to such rates as will he sufficient to keep the road in repair; provided, that the commissioners of the county should at all times have power to prevent any improvements-that they might think unnecessary or improper. And it also provided, that nothing in the act should be construed to make said commissioners or said county liable for said bonds, or contracts for the improvement of the road, or to-the creditors thereof.
Such is the constitution of the plaintiff in error. We-think it is not an incorporated turnpike company within the meaning of the proviso in said section 34. Most certainly it is not “ a company or association of individuals- . . . incorporated for the purpose of making a turnpike or plank-road.” While we may admit that the language of this proviso should not be taken in its strict or literal meaning, still we think the intention of the legislature would be' departed from, if the statute were held to embrace corporations other than those who make or otherwise become possessed of roads as proprietors. If the right to control this road had remained in the commissioners exclusively, it could not be successfully contended that the-power expressly confei’red «upon them, “ to erect one or more toll-gates on the road at such point or points as may be deemed advisable by them, and collect tolls from all persons traveling on said road or any part of the same,” was-modified by the restriction imposed upon incorporated turnpike companies by this proviso. It appears to us that, the plaintiff in error, in the management of this road, stands-in place of the commissioners, and is a mere agent or trustee controlling the road for the benefit of the bondholders and creditors, and for the general public, without having any property in the road itself, or any beneficial interest in the tolls; therefore, the keeping of a toll-gate on this road and collecting of tolls thereon, within the corporate limits of the defendant in error, by the plaintiff in error, is not a violation of this proviso in section 34 of the act of May 1, 1852 Motion granted, and judgment reversed.
Welch, White, Rex, and Gilmore, JJ., concurred.